# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Walter Irving Banks, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Civil No. 15-cv-01598 (APM) |
| | ) |
| International Union of | ) |
| Operating Engineers Local 99, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Walter I. Banks claims that his union, Defendant International Union of Operating Engineers, Local 99 ("IUOE"), and certain of its officials and representatives, discriminated against him based on his race, age, and disability while representing him in grievance proceedings against his former employer. Plaintiff also appears to assert that Defendants breached their duty of fair representation in those proceedings. Defendants have moved to dismiss Plaintiff's Complaint in its entirety, contending that (1) his statutory discrimination claims are preempted by federal labor law; (2) his duty of fair representation claim is barred by the statute of limitations; and (3) his discrimination claims are not plausible.

For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff has stated plausible claims of discrimination against IUOE based on race, age, and disability. Those claims against the named IUOE officials and representatives, however, must be dismissed because there is no individual liability under the relevant federal discrimination statutes. Further, Plaintiff's claim for breach of the duty of fair representation is time-barred and therefore must be dismissed.

## II. BACKGROUND

### A. Factual Background

Plaintiff is a 62-year old African American male, who, until October 2013, was employed as a "material handler" by LB&B Associates, Inc., in Columbia, Maryland. Notice of Removal, ECF No. 1, Compl., ECF No. 1-1, ¶¶ 2-3, 5, 13.[1] In early October 2013, Plaintiff sustained a back injury during a workplace accident. *Id.* ¶ 5. Shortly thereafter, he filed an injury report with his employer, who fired him roughly a week later, on October 17, 2013. *Id.*

Plaintiff then turned to his union—IUOE—for assistance. He first spoke with Defendant Mark Sexton, described by Plaintiff as the "union representative," who referred him to IUOE's President, Defendant Michael Murphy. *Id.* ¶¶ 6-7. Murphy advised Plaintiff that his employer had violated the collective bargaining agreement by terminating him and that the union would pursue a grievance on his behalf through arbitration proceedings. *Id.* ¶ 7. The union hired an outside lawyer, Defendant Jordan Kaplan, to represent Plaintiff. *Id.* ¶ 8.

Plaintiff alleges that Kaplan's representation of him was deficient in multiple respects. Kaplan informed Plaintiff that his employer did not want him to return with a disability or with accommodations. *Id.* ¶ 10. When Plaintiff asked whether his employer's position would violate the Americans with Disabilities Act, Kaplan told him that he did not know. *Id.* Kaplan further advised Plaintiff that the union had no intention of moving forward with arbitration proceedings and suggested that Plaintiff consider retirement as an option because of his age. *Id.* Kaplan also said that Plaintiff's employer had threatened to fire him again even if Plaintiff were to prevail at arbitration and be reinstated to his position. Finally, Kaplan informed Plaintiff that he had no

---

[1] ECF Number 1-1 contains multiple copies of the Complaint. The court cites only to the first, which can be found on ECF-generated page numbers five through seven.

further recourse and would have to accept the employer's settlement offer of $12,000—and, even if he refused, the union nonetheless would accept the offer and "close the case." *Id.* ¶ 11.

Plaintiff further alleges that the union represented white members eight years earlier—in 2006—in similar grievance proceedings and helped them get their jobs back. *Id.* ¶ 12. He also claims that the union failed to provide him with various policies and other relevant documents during his grievance process. *Id.* ¶ 13.

### B. Procedural Background

On August 11, 2015, Plaintiff filed a *pro se* suit in the District of Columbia Superior Court against IUOE and its individual officials and agents. *See generally* Compl. His Complaint alleges statutory claims of discrimination based on his race under Title VII, 42 U.SC. § 2000e-2; his age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and his disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. *Id.* at 1. And, although far from crystal clear, Plaintiff also appears to allege a breach of the union's duty of fair representation. *Id.* (alleging "In addition, breach of Fair Representation Duty").

On October 1, 2015, Defendants removed the case to this court. *See* Notice of Removal. Their Motion to Dismiss followed six days later. *See generally* Defs.' Mot. to Dismiss, ECF No. 3, Defs.' Mem. of P&A in Supp. of their Mot. to Dismiss, ECF No. 3-1 [hereinafter Defs.' Mot.].

## III. LEGAL STANDARD

Where, as here, the plaintiff is proceeding *pro se*, the court must construe the complaint liberally, and hold it to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Further, in evaluating a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who

must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## IV. DISCUSSION

### A. Breach of Duty of Fair Representation

The court begins with Plaintiff's claim that IUOE breached its duty of fair representation when counseling him in grievance proceedings against his former employer.[2] Compl. at 2. Defendants contend that, if Plaintiff's breach of duty of fair representation claim fails, so too must his statutory discrimination claims. Defs.' Mot. at 7.

As the exclusive bargaining representative of employees within Plaintiff's bargaining unit, *see* Compl. ¶ 3, IUOE had a statutory duty to fairly represent Plaintiff and all other covered employees. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1983). That duty required IUOE, among other things, not to ignore a meritorious grievance against Plaintiff's employer or process such grievance in a "perfunctory fashion." *Id.* at 191. IUOE risked breaching its duty of fair representation if its "conduct toward a member of the collective bargaining unit [wa]s arbitrary, discriminatory, or in bad faith." *Id.* at 190.

IUOE argues that Plaintiff's claim for breach of the duty of fair representation must be dismissed because it is barred by the statute of limitations. Defs.' Mot. at 6-7. The court agrees. Such a claim is governed by a short, six-month limitations period. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983). Plaintiff alleges that IUOE breached its duty of fair representation by coercing him to accept a settlement against his wishes on or around May 5, 2014. Compl. ¶¶ 9-12. The limitations period began to run no later than that date under the facts alleged. *See Simmons v. Howard University*, 157 F.3d 914, 916 (D.C. Cir. 1998) (stating that the statute of limitations begins to run on a breach of duty of fair representation claim when "the claimant

---

[2] In his opposition, Plaintiff concedes that his claim for breach of duty of fair representation cannot be brought against the individual defendants. Pl.'s Mot. in Opp'n, ECF No. 6 [hereinafter Pl.'s Opp'n], at 10. Accordingly, the court considers that claim as made only against IUOE.

discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation") (citation omitted). Plaintiff did not, however, file his lawsuit in Superior Court until August 11, 2015, well after the six-month limitations period had expired. *See* Compl. at 1. Plaintiff does not offer any basis to toll the limitations period. *See* Pl.'s Opp'n at 9-10. Nor can the court discern any such basis from the Complaint. *See Simmons*, 157 F.3d at 917 (stating that the limitations period may be tolled "when the plaintiff is fraudulently induced to delay filing his suit" or "in good faith attempts to exhaust grievance procedures"). Accordingly, Plaintiff's claim against IUOE for breach of the duty of fair representation is dismissed.

### B. Statutory Discrimination Claims

The court now turns to Plaintiff's statutory discrimination claims. Defendants first contend that Plaintiff "seeks redress under the laws of the District of Columbia and Title VII" and "[i]n so doing, [Plaintiff] raises a matter wholly preempted by federal labor law." Defs.' Mot. at 3. But Plaintiff has not asserted any claims under District of Columbia law. And Defendants offer no authority for the proposition that federal anti-discrimination statutes are preempted by federal labor laws. Nor could they. Each of the three federal statutes that Plaintiff invokes—Title VII, the ADEA, and the ADA—expressly applies to labor unions. *See* 42 U.S.C. § 2000e-2(c) (expressly forbidding a "labor organization" from discriminating "against[] any individual because of his race"); 29 U.S.C. § 623(c) (making it unlawful, under the ADEA, for a "labor organization" "to discriminate against[] any individual because of his age"); 42 U.S.C. § 12111(2) (defining, under the ADA, the term "covered entity" to include a "labor organization").

Next, Defendants argue that a breach of the duty of fair representation is an element of a discrimination claim against a union, and that because Plaintiff's breach-of-duty claim is time-barred, so too are Plaintiff's discrimination claims. Defs.' Mot. at 7. Their argument must fail,

6

however, because its premise is wrong—a breach of the duty of fair representation is not an element of a *prima facie* discrimination case.

Our Court of Appeals has recognized that a union can be held liable under the anti-discrimination laws for failing to carry out its duty of fair representation and the "facts support a finding of [ ] discrimination" by the union. *Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, (D.C. Cir. 1973), *disapproved of on other grounds by Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454 (1975) (holding that "if the local's performance is found to be arbitrary or in bad faith and the facts support a finding of racial discrimination, then [the local] would appear liable under Title VII"). It has not, however, articulated the precise elements of such a hybrid claim. Defendants cite *York v. AT&T Co.*, 95 F.3d 948, 957 (10th Cir. 1996), for the proposition that:

> To establish a prima facie Title VII claim against a union for breach of its duty of fair representation, a plaintiff must show (1) the employer violated the collective bargaining agreement with respect to the plaintiff, (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation, and (3) there was some indication that the union's actions were motivated by discriminatory animus.

*See* Defs.' Mot. at 7.

Other circuits, however, have not made a breach of the duty of fair representation a separate element of a *prima facie* case under either Title VII or other anti-discrimination statutes. Recently, in *Garity v. APWU National Labor Organization*, No. 13-15195, 2016 WL 3607049, at * 8 (9th Cir. July 5, 2016), the Ninth Circuit held that a plaintiff, who had asserted discrimination claims against a union under Title VII and the ADA, similar to the claims at issue here, did not need to prove as an element of his *prima facie* case a breach of the duty of fair representation. The Ninth Circuit's opinion in *Garity* embraced the holding and reasoning of the Seventh Circuit in *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, 740 F. 3d 1104 (7th Cir. 2014). *See Garity*, 2016 WL 3607049 at *12 ("We are persuaded by the *Green* court's

7

decision that a Title VII claim against a union does not include an extra-textual 'breach of the duty of fair representation' element."). In *Green*, the Seventh Circuit held that "[a] claim against a labor organization under [Title VII] does not depend on showing that either the employer or the union violated any state statute or contract. Such a requirement cannot properly be added as part of the prima facie case." *Green*, 740 F.3d at 1107. The court explained that "[n]othing in the text or genesis of Title VII suggests that claims against labor organizations should be treated differently" than similar types of claims against employers. *Id.* at 1105. The court in *Green* thus "with[drew] the language" from prior circuit decisions which had suggested that, to make out a *prima facie* of discrimination against a union, a plaintiff had to show "'the [union] breached its own duty of fair representation by letting the breach [of the collective bargaining agreement] go unrepaired.'" *Id.* at 1106 (quoting *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997)).

For the reasons set forth in *Green*, this court agrees with the Seventh and Ninth Circuits that a plaintiff is not required to show a breach of a union's duty of fair representation in order to make out a *prima facie* case of discrimination under Title VII, the ADA, and the ADEA.[3] The Tenth Circuit's decision in *York* is no longer persuasive because, in *York*, the court directly relied upon and imported the elements of a Title VII *prima facie* case from an earlier Seventh Circuit decision, *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir.1985). *See York*, 95 F.3d at 955-56 (citing *Babrocky*). With the Seventh Circuit now having disavowed *Babrocky* and similar cases, *York*'s inclusion of a breach of duty as an element of a statutory discrimination claim rests

---

[3] Although neither *Garity* nor *Green* involved a claim, as here, under the ADEA, it is well established that cases interpreting disparate treatment claims under Title VII are applicable to similar claims under the ADEA. *See Koger v. Reno*, 98 F.3d 631, 633 (D.C. Cir. 1996) ("Age discrimination is governed by the disparate treatment analysis developed in the Title VII context.").

8

on doubtful grounds. Accordingly, the fact that Plaintiff's breach of duty claim is time-barred does not similarly bar his discrimination claims.[4]

Finally, Defendants argue that Plaintiff's discrimination claims must be dismissed because he has failed to plausibly allege that IUOE's decision to settle, rather than arbitrate, Plaintiff's claim "was motivated by race or age discrimination, or disability." Defs.' Mot. at 7. The court disagrees. A plaintiff alleging discrimination need not make out a *prima facie* case under the *McDonnell Douglas* framework to defeat a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). As long as the "allegations give [the defendant] fair notice of what petitioner's claims are and the grounds upon which they rest," the notice pleading requirement of Federal Rule of Civil Procedure 8(a) is met. *Id.* at 514; *see also Hill v. Bd. of Trs. of the Univ. of the D.C.*, 146 F. Supp. 3d 178, 184-85 (D.D.C. 2015) (observing with respect to discrimination claims that the requirement that a plaintiff allege facts giving rise to a plausible entitlement to relief is not a heavy burden and "the factual detail required to survive a motion to dismiss can be quite limited") (citing cases).

Here, Plaintiff has alleged enough facts to give rise to a plausible inference that his union discriminated against him on the basis of race, age, and disability. Plaintiff has alleged that he possessed a valid grievance against his employer, which was acknowledged by union officials. Compl. ¶ 7. Notwithstanding the validity of his grievance, Plaintiff contends that the union's lawyer essentially coerced him to drop his grievance, by telling him that if he refused, the union

---

[4] Defendants also cite no authority for the dubious proposition that, even if a breach of the duty of fair representation were an element of a *prima facie* case of discrimination, such an element of proof would somehow alter the statutory limitations period for each of Plaintiff's discrimination claims. Defs.' Mot. at 7.

would settle the matter over his objection. *Id.* ¶ 10. The union lawyer noted Plaintiff's age—62 years old—and referenced retirement in urging him to settle. *Id.* He also ignored Plaintiff's stated concerns that his employer's refusal to reinstate him with reasonable accommodations might be a violation of the ADA. *Id.* And, finally, although seemingly remote in time, Plaintiff alleges that white union members received more favorable treatment than he did when resolving similar grievances with his employer. *Id.* ¶ 12. Based on the foregoing, the Plaintiff has satisfied the notice pleading requirements of Rule 8 to state claims for discrimination under Title VII, the ADEA, and the ADA.

Finally, the court dismisses Plaintiff's discrimination claims against the named individual defendants. They cannot be held individually liable under Title VII, the ADEA, or the ADA. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (holding that an individual employee cannot be held liable under Title VII); *Bilal-Edwards v. United Planning Org.*, 15 F. Supp. 1, 12 (D.D.C. 2013) (holding that an individual employee cannot be held liable under the ADEA and citing cases); *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 186-87 (D.D.C. 1997) (applying the holding in *Gary* to the ADA).

V.   **CONCLUSION AND ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. The Motion is granted in its entirety as to the individual defendants—Murphy, Sexton, and Kaplan—who are dismissed from this action. It is also granted as to Plaintiff's claim against IUOE for breach of duty of fair representation. The Motion, however, is denied in regard to Plaintiff's discrimination claims against IUOE under Title VII, the ADEA, and the ADA.

Dated: July 27, 2016

Amit P. Mehta
United States District Judge